## A92A1228. BIRD v. BISHOP.
(427 SE2d 301)

SOGNIER, Chief Judge.

At the time of Mary Bird's death in August 1990, she and Richard Bird were separated but the final divorce decree had not been entered. Mr. Bird, as her surviving spouse, see *Simpson v. King*, 259 Ga. 420, 422 (3) (383 SE2d 120) (1989), applied for a year's support out of Ms. Bird's estate, see OCGA §§ 53-5-1 (b); 53-5-2, and upon the probate court's denial of his application, he appealed to the Superior Court of Cherokee County for a de novo review of that ruling. See OCGA §§ 53-5-21 (d); 5-3-29. The trial court denied his application, and he appeals. See *Phillips v. State*, 261 Ga. 190 (402 SE2d 737) (1991).

The record reveals that the Birds appeared in court in April 1989 at a hearing regarding their divorce proceedings. A transcription of that hearing reflects that counsel for appellant outlined the general terms of the settlement between the parties. Those terms required, inter alia, that appellant deed the parties' Cherokee County home to Ms. Bird and pay the mortgage and $2,500 a month to Ms. Bird until April 1, 1990; that Ms. Bird would transfer to appellant any interest she has in a Maine property; and that the parties would receive stock, transportation vehicles, and similar items already registered in their own names, as well as all of each parties' own premarital personalty, but left the division of other personalty for subsequent determination. A review of the transcript reveals that the word "alimony" was not used once among the terms set forth by counsel and although counsel, in referring to the $2,500 monthly payment by appellant to Ms. Bird, noted that that sum "is what [appellant is] currently paying as support," nothing in the transcript indicates that appellant's *future* payments of that monthly sum under the terms of the oral agreement constituted support or alimony. In response to questioning by the trial court the Birds acknowledged that these terms constituted "a final settlement of all matters pending between [them] concerning [their] divorce" and that the terms were correctly stated, left nothing

out, and included nothing the Birds had not accepted. However, at the time of Ms. Bird's death approximately 16 months later, the Birds had not memorialized the settlement agreement and were still in the process of negotiating terms not included among those terms outlined by counsel in the April 1989 hearing. Appellant in his uncontroverted affidavit listed a substantial number of obligations assumed by the parties in the oral agreement, which he averred remained unfulfilled at the time of Ms. Bird's death.

In its order denying appellant's application for year's support, the trial court found that the few terms set forth at the April 1989 hearing contained the final disposition of all issues between the Birds and constituted a valid agreement. The trial court then determined that two statutes in the alimony chapter of Title 19, OCGA §§ 19-6-7; 19-6-8, were applicable to this case. OCGA § 19-6-8 provides that "[i]n cases of voluntary separation . . . a party voluntarily, by contract or other written agreement made with his spouse, may make an adequate provision for the support and maintenance of such spouse . . . . Such an agreement shall be a bar to the right of the spouse to permanent alimony." OCGA § 19-6-7 provides in pertinent part that "[a]fter permanent alimony is granted, upon the death of the party liable for the alimony the other party shall not be entitled to any further interest in the estate of the deceased party by virtue of the marriage contract between the parties."

Although the agreement between the Birds was oral and did not specifically address alimony or support, the trial court determined the agreement could substitute for the "contract or other written agreement . . . [containing] adequate provision for the support and maintenance of [a] spouse" recognized by OCGA § 19-6-8. The trial court then reasoned that this oral agreement, despite its silence regarding alimony or support, constituted the grant of "permanent alimony" so as to invoke the provisions of OCGA § 19-6-7, and applying that statute accordingly barred appellant from making his claim for year's support, apparently under the theory that the absence of any provision in the oral agreement of "support and maintenance" was because *appellant* "did not need any."

Pretermitting appellant's assertion that the trial court failed to conduct a de novo hearing and assuming, arguendo, the correctness of the trial court's determination that the Birds entered into a valid, binding oral contract the terms of which are set forth in the April 1989 transcript,[1] we agree with appellant that the trial court misap-

---

[1] Because the trial court determined the terms set forth by counsel during the April 1989 hearing encompass all the issues agreed upon by the Birds, reference cannot be made either to statements subsequently made by Ms. Bird in the transcript, indicating that she considered the settlement to have concluded the issues of alimony and support, or to any of the

plied OCGA §§ 19-6-7; 19-6-8 to hold his claim was barred.

In the case sub judice, there is no written executed agreement made an order of the court expressly listing alimony or support as among the issues settled by the parties. Thus, there is no "written" agreement containing "adequate provision" for support to fulfill the requirement set forth in the plain language of OCGA § 19-6-8. Furthermore, in the absence of any provision for alimony or support in the oral agreement, OCGA § 19-6-7 by its plain terms is inapplicable because it addresses claims by an alimony-receiving spouse on the estate of the alimony-paying spouse once alimony issues have been permanently settled.

Nothing in *Simpson*, supra, and *Gore v. Plair*, 173 Ga. 88 (159 SE 698) (1931) supports the trial court's conclusion that these statutes apply to bar a spouse's claim on a deceased spouse's estate simply because the parties had orally agreed to an equitable division of their property without, intentionally or mistakenly, referring to alimony or support. In both *Simpson* and *Gore*, estranged wives were barred from making claims on deceased husbands' estates based on the execution by the couples of written contracts expressly providing that the settlements resolved all issues of alimony and support. In *Gore*, the Supreme Court applied the predecessor statutes to both OCGA § 19-6-8 and OCGA § 19-6-7[2] to hold that an agreement settling all claims for alimony and support under the earlier version of OCGA § 19-6-8 barred the spouse who had received an alimony-substitute under that agreement from asserting her dower right against the decedent's estate pursuant to the earlier version of OCGA § 19-6-7. In light of that opinion, we are not inclined to construe the absence of any express reference to OCGA § 19-6-8 in *Simpson* to constitute an indication that the Supreme Court does not require settlement agreements to comply with OCGA § 19-6-8 before such settlements can substitute for the grant of permanent alimony for purposes of barring claims under OCGA § 19-6-7. However, even if our inclination proves incorrect, the facts in *Simpson*, particularly the stress the Supreme Court placed upon the language in the written agreement reflecting the parties' desire to settle all issues of alimony, would distinguish *Simpson* from the case at bar.

The record does not support the dissent's assertion that the

---

unexecuted written agreements between the parties, the last of which, dated June 1990, specifically provided that the property transfers contemplated by the parties were "not alimony nor settlement of any marital property rights" and required a monthly payment of alimony to Ms. Bird by appellant.

[2] OCGA § 19-6-7 (Ga. Code Ann. § 30-218); except for the use of gender-neutral language, is essentially identical to Civil Code of 1910, § 2991. Similarly, OCGA § 19-6-8 (Ga. Code Ann. §§ 30-211; 30-210 (2) (3)) tracks in gender-neutral language the provisions of Civil Code of 1910, §§ 2983; 2984.

Birds settled all issues of temporary and permanent alimony when they agreed to the terms outlined during the April 1989 hearing. However, we note that even if evidence extrinsic to the April 1989 hearing is considered to fill out the "outline" of the settlement and elucidate in greater detail the true intention of the parties, that extrinsic evidence — i.e., the unexecuted written agreement of June 1990 — expressly rebuts the dissent's position that appellant's receipt of an equitable portion of the property constituted any type of alimony. Further, the provision in that document requiring payment of alimony by appellant to Ms. Bird — a fact also found by the trial court — would clearly place appellant's claim for year's support outside the plain language of OCGA § 19-6-7 since appellant would have been the alimony-paying spouse making a claim on the alimony-receiving spouse's estate (i.e., the opposite situation to that contemplated by the statute).

Therefore, OCGA §§ 19-6-7; 19-6-8 do not apply to bar appellant's claim because those statutes do not encompass oral agreements that fail to provide for or otherwise address alimony or support issues. Since neither the plain language of these statutes nor the holdings in *Simpson* and *Gore*, supra, authorize the bar of appellant's year's support claim merely because the Birds gave and received property to settle the divorce action, the trial court erred by denying appellant's claim.

*Judgment reversed. Birdsong, P. J., Carley, P. J., Pope, Beasley, Cooper, Andrews and Johnson, JJ., concur. McMurray, P. J., dissents.*

McMURRAY, Presiding Judge, dissenting.

In my view, Mr. Bird cannot share in Mrs. Bird's estate by way of inheritance or year's support because he reached a settlement with regard to all issues in the divorce action, including alimony. Accordingly, I dissent.

Mary Bird sued Richard Bird for divorce, alleging the marriage was irretrievably broken, and seeking an equitable division of the marital property, in addition to temporary and permanent alimony. Thereafter, the parties announced the terms of a settlement agreement in open court. Pursuant to the agreement, each party was to give and receive property to the other. The judge asked the Birds if they "agree to this as a final settlement of all matters pending between yourselves concerning this divorce?" They said that they did. Thus, the Birds divided their property and settled all issues in the divorce action, including temporary and permanent alimony.

Because he settled the alimony issues in the divorce case, Mr. Bird's claims to Mrs. Bird's estate cannot succeed. *Simpson v. King*, 259 Ga. 420, 422 (383 SE2d 120); *Gore v. Plair*, 173 Ga. 88 (159 SE

698); *Hall v. First Nat. Bank of Atlanta*, 89 Ga. App. 853, 855 (81 SE2d 522). In effect, Mr. Bird "is barred from receiving anything further from the estate 'by virtue of the marriage contract. . . .' OCGA § 19-6-7." *Simpson v. King*, 259 Ga. 420, 422, supra; *Gore v. Plair*, 173 Ga. 88, supra.

The majority attempts to distinguish *Simpson v. King*, 259 Ga. 420, 422, supra, and *Gore v. Plair*, 173 Ga. 88, supra, by pointing to the express use of the word "alimony" in the settlement agreements reached by the husbands and wives in those cases. I think this is a distinction without a difference. As I pointed out above, alimony issues were injected into the Birds' divorce case and Mr. Bird agreed to settle "all matters" in the case.

Mr. Bird agreed to settle all issues in the divorce case, including alimony; he should not be permitted to share in Mrs. Bird's estate. *Simpson v. King*, 259 Ga. 420, 422, supra; *Gore v. Plair*, 173 Ga. 88, supra.